OPINION of the court
Harold J. Hughes, J.
Petitioners seek judgment (1) declaring that the respondents owe petitioners a defense in a civil action pending against them in United States District Court for the Northern District of New York in which Calvin V. Jenkins is plaintiff, and ordering respondents to provide same; (2) declaring that the respondents must indemnify petitioners in the amount of any judgment or settlement obtained against them in the Jenkins action; and (3) awarding petitioners disbursements, costs and attorneys’ fees in this proceeding.
On November 30, 1983 petitioners were served with a summons and complaint in a civil action commenced in *447 United States District Court for the Northern District of New York. The amended complaint in that action alleges that it is brought pursuant to section 1983 of title 42 of the United States Code to redress the deprivation by defendants, acting under color of State law, of Jenkins’ constitutional rights. The complaint alleges that on December 3, 1982 Jenkins was an inmate at the Coxsackie Correctional Facility, that at approximately 3 p.m. in the afternoon of that day Correction Officer Spitz opened Jenkins’ cell door, permitting Correction Officers Cataldo and Vadney to enter, that Cataldo and Vadney thereupon assaulted Jenkins, beating him into a state of unconsciousness.
Immediately upon receipt of the process, Spitz and Vadney filed a written request with the Attorney-General for representation under section 17 of the Public Officers Law. Paragraph (a) of subdivision 2 of section 17 of the Public Officers Law provides in pertinent part as follows: “[T]he state shall provide for the defense of the employee in any civil action or proceeding in any state or federal court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties, or which is brought to enforce a provision of section nineteen hundred eighty-one or nineteen hundred eighty-three of title forty-two. of the United States Code.”
By letter dated December 8, 1983 Assistant Attorney-General James G. McSparron advised petitioners that: “Based upon our review of this matter and the facts and circumstances as they are now known to us, we have concluded that the actions which gave rise to the litigation at issue and the allegations against you as contained in the complaint occurred while you were acting outside the scope of your public employment. Therefore, the New York State Department of Law cannot assume responsibility for your defense in this proceeding.”
Dissatisfied with that determination, petitioners commenced the instant proceeding. Upon oral argument petitioners’ counsel conceded that the second cause of action seeking indemnification is premature and, accordingly, that cause of action will be dismissed, without prejudice to a later application for indemnification in the event a *448 judgment or settlement is obtained against petitioners in the Federal action. Likewise, the third cause of action which purports to assert a common-law cause of action for indemnification against the State must be dismissed for failure to state a cause of action. The right of employees to be indemnified by the State is purely a creature of statute, and was unknown at common law. Moreover, to the extent that petitioners are attempting to assert some form of common-law action for indemnification or contribution, any such claim would have to be maintained in the Court of Claims, rather than this court (see Bay Ridge Air Rights v State of New York, 44 NY2d 49). The third cause of action in the petition will be dismissed.
The issues remaining for determination are: (1) whether petitioners are owed a defense by the State under section „ 17 of the Public Officers Law; (2) the role of the Attorney-General under section 17; and (3) whether petitioners’ defense expenses to date in the Federal action should be reimbursed by the State.
Initially, the court notes that a denial by the Attorney-General of a State employee’s request for a défense under section 17 of the Public Officers Law permits the employee to challenge that determination in this court (see De Vivo v Grosjean, 48 AD2d 158, 160). The issue should either be raised by motion in the pending civil action against the State employee if the State is a coparty, or by a separate special proceeding (see Public Officers Law, § 17, subd 2, par [b]). The question is whether the State employee is entitled to the protection of section 17.
The Jenkins complaint specifically alleges that Vadney and Spitz were correction officers at the time of the occurrence complained of and that the action is maintained against them pursuant to section 1983 of title 42 of the United States Code. The language of section 17 (subd 2, par [a]) of the Public Officers Law is clear and unambiguous. In such a situation the duty of the court is to apply “the well-established rule of statutory construction that where the words of a statute are free from ambiguity and doubt, and express plainly, clearly and distinctly the intent of the Legislature, there is no need to resort to other means of interpretation” (Matter of Shannon v Introne, 80 AD2d 834, *449 835, affd 53 NY2d 929; McKinney’s Cons Laws of NY, Book 1, Statutes, § 76). The plain and unambiguous language of this statute directs “the state shall provide for the defense of the employee in any civil action * * * in * * * federal court * * * which is brought to enforce a provision of section * * * nineteen hundred eighty-three of title forty-two of the United States Code.” The petitioners are entitled to a defense. Any contrary interpretation of the statute would do violence to the intent of the Legislature as plainly expressed in the language chosen by it.
The second issue for determination is the role of the Attorney-General in determining whether State employees are entitled to a defense under section 17 of the Public Officers Law. The Attorney-General believes that he has broad discretion in determining whether to afford a defense. In this case, the Attorney-General conducted his own investigation and decided that a defense was not required under the statute. This approach represents a fundamental misunderstanding of the scope of section 17 and the Attorney-General’s role thereunder. The Legislature has not invested the Attorney-General with broad discretion to determine the ultimate facts and base his determinations as to whether to provide a defense thereon. Rather, the statute (Public Officers Law, § 17, subd 2, par [a]) requires the State to provide a defense for any incident “arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties, or which is brought to enforce a provision of section nineteen hundred eighty-one or nineteen hundred eighty-three of title forty-two of the United States Code” (emphasis supplied). The statute imposes a three-part test to be applied by the Attorney-General in determining whether a defense is authorized.
Two parts of the test require a review of the complaint in the action against the State employee. First, the Attorney-General must review the charges of the complaint to determine if it is alleged that the State employee committed a wrongful act within the scope of his public employment. If there is such an allegation, a defense must be provided, irrespective of the actual facts or ultimate factual determi *450 nation. In other words, the determining factor is the conduct charged by the injured party, not what the actual conduct may in fact have been. On that score, the Attorney-General’s role is much like that of an insurer reviewing a complaint to determine if a defense must be provided (see, generally, International Paper Co. v Continental Cas. Co., 35 NY2d 322, 325-326). Analogizing section 17 to insurance practices is appropriate (see Matter of Garcia v Abrams, 98 AD2d 871).
The second part of the test requires the Attorney-General to review the complaint to determine if a cause of action under sections 1981 or 1983 of title 42 of the United States Code is stated. If so, further inquiry is ended, as a defense must be provided. It is irrelevant whether the State employee was actually acting within the scope of his employment at the time of the occurrence, since, by definition, a State employee would have to be acting beyond the scope of his duties in order to violate sections 1981 or 1983 of title 42. Certainly, no State employee is given the assigned task of violating the civil rights of the citizens of this country. Thus, every time a violation of a citizen’s civil rights occurs the responsible State employee must be acting beyond the scope of his employment duties. The Legislature was aware of this fact, and it was one of the reasons for the 1978 revision of the statute (see L 1978, ch 466). The Legislature carefully chose the language so as to make certain that State employees would be furnished a defense in actions brought against them under sections 1981 or 1983 of title 42 of the United States Code.
The third part of the test requires the Attorney-General to investigate the “alleged act or omission” to ascertain whether it did in fact occur “while the employee was acting within the scope of his public employment or duties”. This is the only situation where the Attorney-General is free to go beyond the face of the pleading. Irrespective of the conduct charged in the complaint, if the Attorney-General’s investigation indicates that the wrongful act or omission actually did occur within the scope of the State employee’s duties, the State must provide a defense. Possibly the language was chosen to prevent a clever pleader with a grudge against a State employee from, by the use of an *451 artful complaint, causing the employee to lose the benefit of section 17 and be required to bear his own defense costs.
The final issue is whether the Attorney-General is precluded from representing the petitioner due to a conflict in interest, and whether their counsel bills to date should be reimbursed by the State. A conflict does exist since the position of Superintendent Walter Fogg may be adverse to that of petitioners. No doubt the Attorney-General either has or will be appearing on behalf of Fogg in the Jenkins action and, thus, should not represent these petitioners. Accordingly, the judgment will declare the petitioners are entitled to be represented by private counsel of their choice. Any further ruling as to the amount of attorney’s fees would be premature, since, conceivably, the State and petitioners will agree upon a reasonable fee and a payment schedule. The eventual fee, whether arrived at by agreement of the State and petitioners, or set by the court, must include an amount compensating petitioners’ counsel for his time spent in defending the Federal action from its inception, rather than from the entry of a judgment hereon or some other arbitrary point, since under paragraph (c) of subdivision 2 of section 17 the Attorney-General should have, upon receipt of the process by petitioners, immediately assumed the defense or retained private counsel to protect petitioners until such time as the court could finally determine whether a defense was owed. Finally, petitioners’ legal cost in maintaining this article 78 proceeding is not a recoverable item (see Matter of Garcia v Abrams, 98 AD2d 871, supra).
The courts will grant judgment to petitioners, without costs, as follows: (1) declaring that petitioners are entitled under section 17 of the Public Officers Law to a defense paid for by the State in the action brought against them in Federal court by Calvin V. Jenkins; (2) declaring that petitioners are entitled to be represented by private counsel of their choice in the Jenkins action due to a conflict of interest on the part of the Attorney-General.