*334 OPINION OF THE COURT
Harold J. Hughes, J.
Petitioner brings this proceeding for a judgment annulling a determination of the Attorney-General dated November 2, 1987, that petitioner is not entitled, under section 17 of the Public Officers Law, to a defense paid for by the State in a Federal action entitled Sallito v Reid (87 Civ 0494), and for a direction that certain records be sealed.
The amended complaint in the Federal District Court action brought by inmate John A. Sallito alleges that "Charles Mathis and William J. Eckert were at all times herein Correction Officers employed by the State of New York and assigned to the Fishkill Correctional Facility”. Paragraph 6 of the amended complaint provides: "On the morning of October 4, 1985, plaintiff was directed to appear at the housing unit R West at 8:30 a.m. Plaintiff proceeded to that housing unit as directed and upon arriving was told by defendant Mathis to enter a room. When plaintiff entered the room, defendant Mathis and defendant Eckert without any cause, justification or legitimate provocation, viciously punched plaintiff in the face, threw him to the ground and kicked him about the body, requiring plaintiff to seek medical attention”.
The amended complaint seeks damages pursuant to 42 USC § 1983, and for assault and battery.
As a result of the incident, disciplinary charges were brought against inmate Sallito which were sustained by the Superintendent of the Fishkill Correctional Facility. Sallito brought a CPLR article 78 proceeding to annul that determination and, in a decision and order dated January 21, 1987, Acting Supreme Court Justice John R. King annulled the Superintendent’s determination and dismissed the charges. In so doing Justice King found: "The only substantial evidence in this case supports the inmate’s version of the events of October 4, 1985; that he was brought to R/West on a ruse; that he was assaulted; and, that he was not in possession of a weapon”.
Sallito claims he received a telephone call requesting him to come to R/West and that when he arrived Mathis and Eckert attacked him. The guards denied making the phone call, but Justice King found that "their testimony in this regard is totally unbelievable”.
At the same time that the inmate disciplinary proceeding was wending its way to termination, the Department of Cor *335 rectional Services brought a charge of misconduct for use of excessive force against Charles Mathis which resulted in an arbitration proceeding before a Public Employment Relations Board arbitrator. In decision dated October 22, 1987, the arbitrator found the facts as follows:
"At the time of the incident that gave rise to this grievance, Charles Mathis, the grievant, was assigned to Housing Unit R/West. While on duty at that location, he was approached by inmate John Sallito (82-B-2157). When the Grievant asked Sallito what he was doing in the area, Sallito answered that it was none of his 'fucking business’. With this comment, the Grievant ordered Sallito to enter a room in the entrance of the facility and submit to a 'pat frisk’. At this point, Sallito stated to Mathis that 'if you’re going to lock me up, lock me up for something good’. Sallito then struck the Grievant in the chest.
"The Grievant responded with a right hook to the mouth and a flurry of punches were thrown by both men * * * As a result of the altercation, Sallito was badly bruised about the head, eyes and mouth”.
The arbitrator concluded: "When the record in this case is considered in retrospect, it appears that the Grievant did use excessive physical force in subduing inmate Sallito. I am not persuaded, however, that the Grievant’s actions in this instance should result in his permanent termination from service. The inmate definitely struck the first blow”.
Thus, out of one incident two fact finders arrived at different conclusions as to what occurred. Acting Supreme Court Justice King chose to overturn an administrative determination upon the ground that he did not find credible the same correction officer witnesses that had been believed at the administrative level. The arbitrator did not credit the inmate’s version of the events, instead finding that Sallito instigated the altercation. Of course, Mathis was not a party to Sallito’s proceeding, nor was Sallito a party to the Mathis arbitration.
While the above two proceedings were pending, Sallito commenced a civil action against Mathis in Federal District Court. Mathis duly delivered the summons and complaint to the Attorney-General and requested indemnification and a defense pursuant to the provisions of section 17 of the Public Officers Law which provides in pertinent part as follows:
"2. (a) Upon compliance by the employee with the provisions *336 of subdivision four of this section, the state shall provide for the defense of the employee in any civil action or proceeding in any state or federal court arising out of any alleged act or omission which occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties; or which is brought to enforce a provision of section nineteen hundred eighty-one or nineteen hundred eighty-three of title forty-two of the United States code and the act or omission underlying the action occurred or is alleged in the complaint to have occurred while the employee was acting within the scope of his public employment or duties. This duty to provide for a defense shall not arise where such civil action or proceeding is brought by or on behalf of the state.
"(b) Subject to the conditions set forth in paragraph (a) of this subdivision, the employee shall be entitled to be represented by the attorney general, provided, however, that the employee shall be entitled to representation by private counsel of his choice in any civil judicial proceeding whenever the attorney general determines based upon his investigation and review of the facts and circumstances of the case that representation by the attorney general would be inappropriate, or whenever a court of competent jurisdiction, upon appropriate motion or by a special proceeding, determines that a conflict of interest exists and that the employee is entitled to be represented by private counsel of his choice.” (Emphasis supplied.)
By letter dated July 3, 1987, the Attorney-General advised Mr. Mathis that he was entitled to a defense pursuant to section 17 of the Public Officers Law and an Assistant Attorney-General was assigned to handle his case. The Attorney-General undertook the defense and continued to do so until December of 1987, when Assistant Attorney-General Dennis J. Saffran sent a letter to petitioner’s counsel advising that no further representation would be afforded in the Federal action because: "It is the opinion of this office and of the Department of Correctional Services that Officer Mathis’ use of excessive force, in the context of which the Supreme Court found that it occurred, was not an action 'within the scope of his public employment or duties’ within the meaning of Public Officers Law § 17”.
Thus, based upon Mr. Justice King’s determination, the Attorney-General has concluded that Officer Mathis was not acting within the scope of his employment at the time of the *337 fight with Sallito and was not entitled to the benefits of the Public Officers Law. This proceeding ensued.
In a prior case, this court held that the denial by the Attorney-General of a State employee’s request for a defense under section 17 of the Public Officers Law is an administrative determination which the employee can challenge either by motion made in the pending civil action against the employee or by a special proceeding (Matter of Spitz v Abrams, 123 Misc 2d 446, affd 105 AD2d 904). The Spitz case involved a claim by an inmate that Officer Spitz and other guards assaulted him. The Attorney-General refused to provide a defense on the ground that Officer Spitz was not acting within the scope of employment at the time of the alleged assault. This court reversed, declaring that under the statute as it then read there was no requirement that the event giving rise to the Federal claim occurred in the course of employment. After the Spitz decision, section 17 was amended by Laws of 1985 (ch 768) to include the language that the activity by the employee giving rise to the civil rights violation must have occurred, or have been alleged to have occurred, "while the employee was acting within the scope of his public employment or duties.” Officer Spitz eventually settled the Federal action without a jury ever determining the scope of employment issue. He then sought indemnification from the State under section 17. This court granted Spitz’s article 78 petition to annul the Attorney-General’s refusal to indemnify but the Appellate Division reversed, holding that Spitz’s remedy was not an article 78 proceeding but a declaratory judgment action to determine the scope of employment issue (Matter of Spitz v Coughlin, 128 AD2d 281).
Thus, the procedure when a prison guard is sued for assault and a civil rights violation, and the Attorney-General refuses to provide a defense under section 17 upon his own finding that the guard was acting outside the scope of employment, is for the guard to either make a motion in the pending Federal action, or bring an article 78 proceeding in this court to challenge the denial of a defense. If the scope of employment issue is not resolved by the motion or article 78 proceeding, or by verdict or decision in the Federal action, a declaratory judgment action must be brought in Supreme Court to finally determine the question. Here, the Attorney-General has short-circuited that procedure by once again assuming the authority to finally decide whether an employee’s alleged wrongdoing is within the employee’s scope of employment. The Attorney- *338 General is ignoring the first Spitz decision (123 Misc 2d 446, 449, affd 105 AD2d 904, supra), which states: "The second issue for determination is the role of the Attorney-General in determining whether State employees are entitled to a defense under section 17 of the Public Officers Law. The Attorney-General believes that he has broad discretion in determining whether to afford a defense. In this case, the Attorney-General conducted his own investigation and decided that a defense was not required under the statute. This approach represents a fundamental misunderstanding of the scope of section 17 and the Attorney-General’s role thereunder. The Legislature has not invested the Attorney-General with broad discretion to determine the ultimate facts and base his determinations as to whether to provide a defense thereon * * * The statute imposes a three-part test to be applied by the Attorney-General in determining whether a defense is authorized.”
Although section 17 was amended after the Spitz opinion (supra), the Legislature did not expand the Attorney-General’s discretion upon the issue of determining whether the public employee was performing his work duties at the time of the incident giving rise to the lawsuit. That it chose not to do so is clear by comparing section 17 to section 50-k (2) of the General Municipal Law which covers indemnification of employees of local government. That statute reads: "At the request of the employee and upon compliance by the employee with the provisions of subdivision four of this section, the city shall provide for the defense of an employee of any agency in any civil action or proceeding in any state or federal court including actions under sections nineteen hundred eighty-one through nineteen hundred eighty-eight of title forty-two of the United States code arising out of any alleged act or omission which the corporation counsel finds occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged act or omission occurred. This duty to provide for a defense shall not arise where such civil action or proceeding is brought by or on behalf of the city or state or an agency of either.” (Emphasis supplied.)
The above-emphasized language establishes that when the Legislature wishes to give either the Attorney-General or a Corporation Counsel the authority to decide the scope of employment question, it will do so by clear language, and if it does, subsequent court review is limited to the question of *339 whether his decision was rational (Blood v Board of Educ., 121 AD2d 128). That is not the situation under section 17. The Attorney-General’s role is similar to that of an insurance company which must decide if a defense is owed under its policy (see, Matter of Garcia v Abrams, 98 AD2d 871). As explained in the first Spitz decision, the Attorney-General must carefully examine the allegations of the complaint in the action against the employee. In International Paper Co. v Continental Cas. Co. (35 NY2d 322, 325), the Court of Appeals described the function of an insurer in a similar situation as follows: "if the insurer is to be relieved of a duty to defend it is obligated to demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation.”
The Sallito complaint, while alleging that at all times relevant Officer Mathis was employed as a prison guard, does not specifically allege that the officer was acting within the scope of his employment or duties. On the other hand, it does not allege that he was not. Consequently, since the allegations of the complaint are insufficient to determine the duty to defend issue, the Attorney-General properly looked behind the pleading to the facts underlying the occurrence. In so doing, he applied the wrong test. The standard used by the Attorney-General was that he had the same broad discretion to decide the scope of employment question as is given to a Corporation Counsel under General Municipal Law § 50-k, to wit, the power to weigh conflicting accounts of what occurred and render a decision thereon, which will be upheld if rational. That is not the standard under section 17. Like an insurance company, the only time the Attorney-General can deny a defense based upon his determination that the employee was acting outside the scope of employment is when the facts are so clear-cut that reasonable minds could reach no other conclusion. Judge Kaye states the standard in Servidone Constr. Corp. v Security Ins. Co. (64 NY2d 419, 424) as follows: "A declaration that an insurer is without obligation to defend a pending action could be made 'only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [the insurer] might eventually be held to be obligated to indemnify [the insured] under any provision of the insurance policy’ ”.
Here, the Attorney-General’s denial of a defense is the equivalent of deciding as a matter of law that under no *340 circumstance could the Federal jury decide that Mathis was acting within the scope of his employment. Of course, if it does so find, Mr. Mathis will be entitled to indemnity under section 17. The law of this State, and the facts of this case, simply do not support the Attorney-General’s conclusion.
First of all, the Attorney-General’s assumption that an assault upon an inmate by a guard, involving excessive force, must mean that the guard is acting outside the scope of his duties, has been expressly rejected by the Appellate Division, Third Department, in Cepeda v Coughlin (128 AD2d 995, 996, 997), where the court states:
"As observed by Supreme Court, Riviello v Waldron (47 NY2d 297) sets forth five factors with which to determine whether the acts of an employee are within the scope of employment (id., at 303). Giving due regard to these guidelines, we observe that the correction officers were actually on duty in the correctional facility performing a basic job function at the time of the incident, i.e., supervising and controlling the activities and movement of inmates. While the use of excessive force against inmates is prohibited by statute (see, Correction Law § 137 [5]), in actuality, physical force is often required and used to control inmates. In this respect, the record indicates that the physical force resorted to by the correction officers was occasioned by plaintiffs’ own acts of violence. Moreover, the Court of Appeals has instructed that an employee will be considered within the scope of his employment so long as he is discharging his duties, ' " 'no matter how irregularly, or with what disregard of instructions’ ” ’ (Riviello v Waldron, supra, at 302, quoting Jones v Weigand, 134 App Div 644, 645; see, O’Boyle v Avis Rent-a-Car Sys., 78 AD2d 431, 443). Finally, it is entirely foreseeable that correction officers will be called upon to quell disturbances and subdue violence among inmates.
"Here, the correction officers were performing a normal and regular duty of returning inmates to their cells; when confronted with violent refusals to comply accompanied by direct assaults upon them, the officers responded with force. Again, Riviello instructs that 'where the element of general foreseeability exists, even intentional tort situations have been found to fall within the scope of employment’ (Riviello v Waldron, supra, at 304). Custody and control of inmates and the maintenance of prison safety and security are the primary duties and responsibilities of correction officers. It cannot be said that their conduct was outside the scope of their employment. *341 Since there is no conflicting evidence as to the essential facts, a court may make this determination ás a matter of law”.
The Cepeda case (supra) follows a line of authority that goes back over 100 years adhering to the concept that: "The master who puts the servant in a place of trust or responsibility, or commits to him the management of his business or the care of his property, is justly held responsible when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the strict line of his duty or authority and inflicts an unjustifiable injury upon another” (Rounds v Delaware Lackawanna & W. R. R. Co., 64 NY2d 129, 134).
Upon this record, unlike Cepeda (supra) where the facts were so clear that the scope of employment could be decided as a matter of law, the facts are conflicting. If Sallito is believed, a jury could well decide that Officer Mathis was acting outside the scope of his employment. However, if Mathis’s story that Sallito made an unprovoked physical attack upon him is believed, a jury could determine that the officer simply lost his temper because of the passions aroused by the circumstances and the occasion, and defended himself against the inmate. Such a defense, even if involving excessive force, could be found to be within the scope of a prison guard’s duties. Acting Justice King’s decision to the contrary will certainly not be binding upon the Federal court or jury, or Mr. Mathis, since he was not a party to the proceeding before Justice King. In Riviello v Waldron (47 NY2d 297, 303, supra), the Court of Appeals states, "because the determination of whether a particular act was within the scope of the servant’s employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury”. That is the appropriate result here. It should be left for the Federal jury, or this court in a declaratory judgment action if the Federal action is settled, to decide if Mathis was doing his job at the time of the assault. Until that time he is entitled to a defense provided by the State. The Attorney-General’s determination to the contrary will be annulled.
The next issue is whether the Attorney-General should be precluded from representing the petitioner due to a conflict of interest, and whether his counsel bills to date should be reimbursed by the State. A conflict exists. The Attorney-General and his assistants have taken the position that petitioner was not acting as an employee at the time of the assault. *342 Recent case law indicates a consistent pattern on the Attorney-General’s part of refusing defense and indemnification of correction officers accused of assaulting inmates. While this may be a healthy and wise policy in other governmental contexts, it conflicts with the primary purpose of section 17 of the Public Officers Law. That purpose is described by the First Department in Blood v Board of Educ. (121 AD2d 128, 132, supra) in discussing General Municipal Law § 50-k as follows: "the statute is primarily directed at saving imperfect and, therefore, fallible public employees from the potentially ruinous legal consequences following from unintentional lapses in the daily discharge of their duties.”
Here, petitioner could be financially ruined if Sallito obtains a substantial judgment in the Federal action and it is subsequently determined that he is not entitled to indemnity under section 17. It is in his interest to zealously advocate his version of the facts before the Federal jury and his contention that he was within the scope of employment. In view of what has transpired, a private attorney will be better able than one of the Attorney-General’s assistants to advocate petitioner’s interest. The question of payment will be left for later resolution (see, Matter of Spitz v Abrams, 123 Misc 2d 446, 451, affd 105 AD2d 904, supra).
The final request for relief is for an order sealing the record in this litigation and directing the respondents not to disclose the arbitration award. The court sees no basis for sealing the records in this proceeding. Furthermore, the request for relief pursuant to section 50-a of the Civil Rights Law is premature, in that there is no allegation that any of the respondents have disclosed Mr. Mathis’s personnel record in a manner inconsistent with that statute, or with the order of Mr. Justice Conway dated February 26, 1988. Consequently, the court does not reach the issue of whether the arbitrator’s award is a personnel record within section 50-a of the Civil Rights Law.
The petition will be granted to the following extent: (1) declaring that petitioner is entitled under section 17 of the Public Officers Law to a defense paid for by the State in the action brought against him in Federal court by John A. Sallito; (2) declaring that petitioner is entitled to be represented by a private attorney of his choice in the Sallito action due to a conflict of interest on the part of the Attorney-General, and, in all other respects, the petition will be dismissed, with costs to petitioner.