Muhammed HASSAN, Plaintiff,

v.

Guy FRACCOLA, individually and as a
police officer of the City of Utica, New
York; Louis Paciello, individually and
as a police officer of the City of Utica,
New York; Wayne Gentile, individually
and as a police officer of the City of
Utica, New York; Patrick Fraccola, in-
dividually; Benny Rotundo, individual-
ly and as Chief of Police of the City of
Utica, New York; and the City of Utica,
New York, Defendants,

Guy Fraccola, Defendant–Appellee,

City of Utica, Defendant–Appellant.

No. 968, Docket 88–7043.

United States Court of Appeals,
Second Circuit.

Argued April 7, 1988.

Decided July 12, 1988.

Armond J. Festine, Utica, N.Y. (Albert A.
Alteri, Corp. Counsel, Utica, N.Y., of coun-
sel), for defendant-appellant.

Elizabeth J. Gibbons, Utica, N.Y. (Rocco
A. DePerno, Utica, N.Y., of counsel), for
defendant-appellee.

Before OAKES and MINER, Circuit
Judges, and POLLACK, District
Judge.*

OAKES, Circuit Judge:

This appeal presents us with the question
when a New York municipality has the
duty to defend a police officer from a claim
charging him with civil rights violations in
both his individual and official capacities.
The United States District Court for the
Northern District of New York, Howard G.
Munson, Chief Judge, decided the question
in favor of Guy Fraccola, a former Utica
policeman, granting his motion for summa-
ry judgment on his cross-claim against the
City of Utica and ordering the City to pay
his attorney a total of $32,352.12.  On ap-
peal the City claims that the statute which
requires the City to provide a defense also
requires the police officer to establish that
he was acting within the scope of his em-
ployment.  However, because we believe
that the City's duty to defend is triggered
by the allegations made in the complaint,
we affirm the grant of summary judgment.

On March 6, 1985, Mohammed Hassan, a
local college student and a citizen of Jor-
dan, was with several of his friends, includ-
ing Colleen Martin, at the Sheraton Inn and
Conference Center in Utica.  Martin evi-

---

* Of the Southern District of New York, sitting by designation.

dently was the former girlfriend of defendant Patrick Fraccola, whose father is Guy Fraccola, then deputy police chief of the City of Utica. According to the Fraccolas, Patrick Fraccola, in a call to his father at home, claimed that he had been threatened by Hassan in the men's room of the Sheraton Inn. Guy Fraccola then decided that he would go to the hotel and straighten out the matter, and he drove to the Sheraton. Although in plain clothes, Fraccola was wearing his badge on his belt. Along the way he picked up two other Utica police officers, also in plain clothes. At the Sheraton a confrontation occurred, where what was said and done is in some dispute. However, it is undisputed that the police officers took Hassan to the police station for about an hour but did not lodge any charges against him. It is also undisputed that, as a result of an investigation into the matter by the Utica Commissioner of Public Safety, Guy Fraccola was discharged as deputy police chief on a finding that Fraccola had abused his power, harassed the plaintiff, submitted a false report, and otherwise engaged in misconduct. The departmental disciplinary proceedings were unanimously affirmed by the New York Supreme Court Appellate Division, Fourth Judicial Department, by memorandum opinion dated December 14, 1987.

Meanwhile, on August 7, 1985, Hassan sued the City of Utica and the three police officers involved in the incident, as well as the City's chief of police, under 42 U.S.C. § 1983 (1982). Guy Fraccola filed a cross-claim against the City of Utica seeking compensation for his attorney, because the City had refused to provide him with a defense. His claim relied on Article 9 of the Utica City Code, which had incorporated New York Public Officers Law § 18(3)(a) (McKinney 1988), which states that a

> public entity shall provide for the defense of the employee in any civil action or proceeding, state or federal, arising out of any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of his public employment or duties.

Hassan's lawsuit has been settled by the City, leaving only Fraccola's cross-claim against the City.

Hassan's complaint claims that Guy Fraccola was acting within the scope of his public employment or duties, and alleges facts which clearly support that claim. The suit names Fraccola "individually and in his official capacity." He, with Officer Gentile, is alleged to have forced Hassan "into an unmarked police vehicle" and to have "transported plaintiff in said unmarked police vehicle to the Utica Police Station," where plaintiff was "unlawfully detained, searched, interrogated." The complaint subsequently alleged that the "abduction, interrogation and other acts of defendants" were done "intentionally, wantonly, maliciously, without probable cause," and goes on to allege that the officers "filed false reports and statements with the Utica police department for the purpose of camouflaging and covering up the [alleged] illegal abduction" and other acts.

As the complaint makes the necessary allegations, our only question is whether the duty to defend is conclusively triggered by the complaint alone, or whether the complaint merely puts the City on notice, allowing it to make its own determination of fact as to whether the defendant was acting within the scope of his or her employment before assuming the duty to defend.

In taking the latter position, Utica relies principally on *Williams v. City of New York*, 64 N.Y.2d 800, 476 N.E.2d 317, 486 N.Y.S.2d 918 (1985) (mem.), for the proposition that scope of employment is a factual issue to be determined by the entity with the statutory obligation to defend. In *Williams*, the court held that a determination by the Corporation Counsel of the City of New York that a New York City correction officer acted outside the scope of employment when he committed acts for which he was later sued was controlling on the duty to defend, subject only to an arbitrary and capricious standard of review. *Id.*, 64 N.Y.2d at 802, 476 N.E.2d at 318, 486 N.Y.S.2d at 919. However, the *Williams* court was interpreting New York

General Municipal Law section 50–k[2] (McKinney 1986), which on its face provides that New York City shall defend alleged acts "which the corporation counsel finds occurred while the employee was acting within the scope of his public employment." This statute clearly provides that the corporation counsel shall make a determination of fact, rather than relying on the complaint. As such, it is fundamentally different from and inconsistent with the statute we must interpret.

Fraccola's argument rests primarily on *Spitz v. Abrams,* 123 Misc.2d 446, 473 N.Y. S.2d 931 (Sup.Ct.), *aff'd,* 105 A.D.2d 904, 482 N.Y.S.2d 68 (3d Dep't 1984) (mem.), which interpreted section 17 of the Public Officers Law, which provides for defense and indemnification of state officers and employees. The language of section 17 is similar to that of section 18, except that it is more precise; it states that the State shall provide a defense for "any alleged act or omission which occurred or *is alleged in the complaint* to have occurred while the employee was acting within the scope of his public employment or duties," N.Y.Pub. Off.Law § 17(2)(a) (McKinney 1988) (emphasis added), while section 18 refers only to "any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of his public employment or duties," *id.* § 18(3)(a). Justice Hughes relied on section 17's plain language in holding that the Attorney General had no discretion to refuse to defend an employee, provided that the complaint alleged an improper act within the scope of employment. "[T]he determining factor is the conduct charged by the injured party, not what the actual conduct may in fact have been." 123 Misc.2d at 450, 473 N.Y.S.2d at 934.

The court also noted that the State's role, in reviewing the request to defend, "is much like that of an insurer reviewing a complaint to determine if a defense must be provided." *Id.* It is unquestioned under New York law that an insurer's duty to defend is broader than its duty to indemnify.

[A]n insurer's duty to defend is exceedingly broad, which is in the interest of the insured. The duty arises whenever the allegations of the complaint, for which the insured may stand liable, fall within the risk covered by the policy. The ultimate responsibility of the insured is not a consideration.

*Colon v. Aetna Life & Casualty Ins. Co.,* 66 N.Y.2d 6, 8, 484 N.E.2d 1040, 1041, 494 N.Y.S.2d 688, 689 (1985). In affirming *Spitz,* the Third Department referred simply to the "clear and unambiguous" language of the statutory provision. 105 A.D. 2d at 905, 482 N.Y.S.2d at 69.

Our interpretation of the statute begins with the language itself, *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979), and the rule that that language will be controlling when its context makes its meaning sufficiently clear, *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976). Section 18(3)(a) provides that a municipality will furnish an employee with a defense in a lawsuit arising from certain "alleged act[s] or omission[s]." The language immediately following can be reasonably read only as establishing the situations within which a defense will be provided, so that acts "which occurred or allegedly occurred" within the scope of the employee's duties are those covered. As the words "allegedly occurred" would have no purpose if the municipality could decide for itself whether the questioned acts occurred within the scope of the employee's duties, and we should interpret the statute to avoid surplusage, *State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir. 1985), the only reasonable interpretation of section 18(3)(a) is that the allegations in the complaint trigger the City's duty.

We also note the differences in wording between subsection 18(3)(a), which deals with the defense of municipal employees, and subsection 18(4)(a), the indemnification provision. The latter section provides that indemnification will be provided when "the act or omission ... occurred while the employee was acting within the scope of his public employment or duties." It requires a finding of fact, to be made either by a

jury, a judge, or a city attorney in deciding to settle a claim, as the City of Utica did here. It is not unreasonable to think that, had the legislature intended to make the duty to defend rest on a finding of fact, the language of subsection 18(3)(a) would have mirrored that of subsection 18(4)(a).

This interpretation is consistent with section 18's legislative history, which indicates that its defense and indemnification provisions were intended to be the same as those of section 17, in which the duty to defend is triggered by the complaint. *See* Recommendation of the Law Revision Commission to the 1981 Legislature, *reprinted in* 1981 McKinney's Session Laws of New York 2315, 2322 (section 18 to follow provisions of section 17 as closely as possible); Statement of Governor Carey upon approving L.1981 c. 277, 1981 McKinney's Session Laws of New York 2579 (section 18 provides protections identical to section 17's). It is also consistent with the directive of the *Spitz* court to follow insurance law principles, 123 Misc.2d at 450, 473 N.Y.S.2d at 934, in that the duty to defend is broader than the duty to indemnify. *See Colon*, 66 N.Y.2d at 8–9, 484 N.E.2d at 1041, 494 N.Y.S.2d at 689. Finally, this interpretation makes the most sense on a practical level. The issue of whether an employee had been acting within the scope of his employment is one of fact which, in most circumstances, can be determined only after a trial or some other judicial proceeding, e.g., summary or declaratory judgment. For the same reasons that an insurer is not permitted to predetermine an issue of fact in considering its duty to defend, neither should a city, absent a clear directive to the contrary from the legislature (as in New York General Municipal Law 50–k[2]; *see Williams*, 64 N.Y.2d 800, 476 N.E.2d 317, 486 N.Y.S.2d 918), be allowed to anticipate what will be uncovered at trial, especially when the result of its speculation may be to deny its employee a statutorily mandated defense.

Judgment affirmed.