Howard **KELLY**, Plaintiff,

v.

The **CITY OF NEW YORK**, Correction Department of the City of New York, Jose Quinones, Correction Officer, Shield No. 3747, Defendants.

**No. 84 CIV. 4876 (PKL).**

United States District Court, S.D. New York.

Aug. 17, 1988.

Peter L. Zimroth, Corporation Counsel, New York City (Carol R. Edmead, of counsel), for defendants The City of New York and Correction Dept. of The City of New York.

Law Offices of Richard Hartman, Little Neck, N.Y. (Linda M. Cronin, Gerard T. Breen, of counsel), for defendant Jose Quinones, Correction Officer, Shield No. 3747.

**OPINION & ORDER**

LEISURE, District Judge:

Plaintiff Howard Kelly ("Kelly") commenced this action on July 11, 1984 against the City of New York ("City"), the Correction Department of the City of New York ("Correction Department") and Jose Quinones ("Quinones") seeking damages for an alleged violation of his civil rights under color of state law. Defendant Quinones is a Corrections Officer in the Correction Department of New York City, but the City is not defending Quinones in this case. The case is now before the Court on the motion of the City for summary judgment on Quinones' cross-claims. For the reasons stated below, the motion is granted.

**FACTUAL BACKGROUND**

The underlying facts in this case are in dispute. Plaintiff's version of the facts is as follows.[1] Kelly and Quinones first met in or about April of 1981 at the Mid–City Health Club (the "Health Club") where they were both members. At that time, both men were working out with weights at the Health Club. Kelly was bench pressing when Quinones asked if he could work out on the bench. Kelly got up and let Quinones use the bench. When Quinones completed his set of repetitions with the weights, he got up, and Kelly took the bench again. Before Kelly began to lift, he took a few deep breaths to get prepared. Quinones told him either to do the exercise or get off the bench. Kelly told Quinones that he was there first. Kelly then finished his second set of repetitions and got up to let Quinones do his.

Kelly felt a lot of tension, went to the water fountain, and decided to go to a different area of the Health Club to finish his workout. While at the water fountain, Quinones tapped Kelly on the shoulder and said, "I don't like the way you are talking to me." Kelly replied that he did not like the way Quinones was talking to him, but that they should both forget it.

---

**1.** This account is taken from a portion of the deposition testimony of plaintiff. Transcript of deposition of Howard Kelly, annexed as Exhibit D to the City's Notice of Motion for Summary Judgment dismissing Quinones' cross-claim.

Kelly then went into another area to exercise with dumbbells. Quinones again tapped Kelly on the shoulder. When Kelly turned around, Quinones punched Kelly in the nose. Quinones continued to punch Kelly until Quinones was restrained by five other men at the Health Club. Kelly went to the hospital and X-rays indicated that he had a broken nose.

Shortly after the incident, Kelly filed a claim for $1,500 in Small Claims Court. Quinones never appeared in the action, and a default judgment was entered against Quinones in the amount of $1,500. Kelly continued to go to the Health Club every other day, but did not see Quinones there. Each time Kelly went to the Health Club, he carried the judgment with him. He did not encounter Quinones there for approximately two years. He was informed that Quinones still frequented the Club, but his hours at work had changed, so that he now worked out during the day rather than in the early evening.

Kelly next saw Quinones on April 26, 1983. Kelly had been working out for approximately half an hour when he noticed Quinones in the gym. After seeing Quinones, Kelly went to the locker room to get the Small Claims judgment from his bag. When he returned to the gym area, the manager asked to see him in his office, and when he entered the office, Quinones was waiting there. The manager then said that he knew the two of them had had trouble before, but he was hoping they would work things out, and that there would be no problems.

Kelly stated that he had no problem except for the $1,500 Quinones owed him. Kelly handed Quinones the judgment. As Quinones read the judgment, Kelly went to take a shower. As Kelly came out of the shower, Quinones confronted him and asked why Kelly was harassing him and his family. Quinones also asked how Kelly intended to collect on the judgment, and Kelly replied, "through the legal process." At that point, Quinones pulled out his badge and told Kelly he was under arrest. Quinones told Kelly to get dressed because the police would soon be there. After Kelly was dressed, Quinones told him to put his hands against the wall so that Quinones could frisk him. Kelly refused. Quinones then pulled out his gun and put it to Kelly's chest. When Kelly still refused to turn around, Quinones put the gun to Kelly's head and cocked it. Kelly then turned around. Quinones handcuffed Kelly, and a few minutes later, the police arrived and arrested Kelly.

According to Quinones,[2] the events of April 26, 1983 were very different. Quinones was working out when Kelly approached him and began verbally to abuse him. Quinones then asked the manager of the Health Club to ask Kelly to stop the abuse. Thereafter, Kelly approached Quinones with a metal bar and attempted to strike Quinones. Quinones identified himself as a corrections officer, and, without the use of force, arrested Kelly for assault.

## PROCEDURAL HISTORY

Plaintiff commenced this action on July 11, 1984 for violation of his civil rights under color of state law. On August 20, 1984, the City moved to dismiss the complaint for failure to state a claim upon which relief could be based. By order dated January 30, 1985, the Court granted the motion to dismiss and granted plaintiff 45 days in which to replead. On March 21, 1986, plaintiff filed an amended complaint.[3] On March 22, 1985, defendant Quinones served an answer to the amended complaint and asserted counterclaims against Kelly for assault and intentional infliction

---

**2.** This account is derived from the Affidavit of Jose Quinones, sworn to on April 29, 1988, annexed to the Affirmation of Linda Cronin, Esq., in Opposition to Motion for Summary Judgment. As indicated *infra*, papers were also submitted on behalf of Quinones by Ms. Cronin's co-counsel, Gerard T. Breen, Esq.

**3.** The amended complaint was served on all counsel in the case within 45 days of January 30, 1985. A courtesy copy was provided to the Court at that time, but the original was not filed until more than a year later. Because the parties had actually received the amended complaint within 45 days, the amended complaint was accepted for filing on March 21, 1986.

of emotional harm.[4] Quinones also asserted cross-claims against the City, claiming that the City is liable for any damages recovered by plaintiff under section 50–k of the Municipal Law.

On August 5, 1985, plaintiff moved for production of documents from defendants. Further papers on the discovery dispute about production of documents were filed in October, 1985 and April 1986. On April 10, 1986, the City and Correction Department moved for summary judgment as to the amended complaint. On May 1, 1986, the Court adjourned the motion for summary judgment pending resolution of the discovery dispute concerning Quinones' records. On June 12, 1986, Robert W. Piken, Esq., counsel for plaintiff, moved to be relieved as counsel. By order dated September 11, 1986, the Court granted Mr. Piken's motion to be relieved as counsel, and directed plaintiff's new counsel, Susan M. Erda, Esq., to submit a subpoena for production of Quinones' records for *in camera* review.

The parties then agreed to a briefing schedule on the City's motion for summary judgment. By letter to the Court dated July 30, 1987 from Ms. Erda, the following schedule was established: the City would file a supplementary memorandum in support of its motion on or before August 24, 1987; Kelly and Quinones would respond on or before September 14, 1987. The Court received the City's supplementary memorandum on August 12, 1987. On November 17, 1987, the Court received an affirmation in opposition to the motion from Quinones' counsel. When no response was received from the plaintiff more than six weeks after a response was due, on November 30, 1987, the Court ordered plaintiff to submit a response by December 11, 1987. The order stated that "[f]ailure to comply with this order will result in the imposition of sanctions ... [which] may include ... an order striking out pleadings or parts thereof." The Court received no response from plaintiff's counsel, and accordingly ordered that "those parts of the amended complaint filed March 21, 1986 that purport to assert counterclaims against the City defendants are struck out."

The Affirmation of Gerard T. Breen, Esq., filed on November 17, 1987 stated that Quinones took no position on the City's motion for summary judgment against Kelly, but requested that if the motion was granted, that Quinones' cross-claims be converted to a third-party action against the City. The notice of motion for summary judgment provided only that the City was moving for summary judgment against plaintiff, and not on Quinones' cross-claims. On April 13, 1988, the City filed a new notice of motion for summary judgment against co-defendant Quinones' cross-claims, and papers in support of that motion. On April 29, 1988, Quinones' counsel filed papers in opposition to the motion.

## DISCUSSION

The City argues that no cause of action, whether asserted in a cross-claim or third-party claim, lies against it for two reasons. First, the City contends that any action by Quinones is barred by the statute of limitations of four months for instituting special proceedings under Article 78 of the New York Civil Practice Law. Second, the City contends that it is not liable for the tortious acts of an off-duty corrections officer when those acts are beyond the scope of his employment.

Section 50–k of the General Municipal Law provides in pertinent part:

> At the request of the employee and upon compliance by the employee with the provisions of subdivision four of this section, the city shall provide for the defense of an employee of any agency in any civil action or proceeding in any state or federal court including actions under sections nineteen hundred eighty-one through nineteen hundred eighty-eight of title forty-two of the United States code

---

**4.** A search of the docket sheet reveals that Quinones' answer to the amended complaint containing counterclaims and cross claims was never filed with the Court. The answer was apparently timely served on counsel for all parties, and a courtesy copy provided to the Court on or about March 22, 1985.

arising out of any alleged act or omission which the corporation counsel finds occurred while the employee was acting within the scope of his employment and in the discharge of his duties and was not in violation of any rule or regulation of his agency at the time the alleged act or omission occurred.

N.Y. Gen.Mun.Law § 50–k (McKinney 1986).

The City cites *Matter of Williams*, N.Y. L.J. Jan. 25, 1983 (Sup.Ct.N.Y.Cty.), *aff'd mem.*, 99 A.D.2d 1033, 472 N.Y.S.2d 526 (1st Dep't 1984), *aff'd*, 64 N.Y.2d 800, 486 N.Y.S.2d 918, 476 N.E.2d 317 (1985), annexed as Exhibit G to the City's Notice of Motion, for the proposition that a proceeding pursuant to Article 78 is the exclusive means of challenging the Corporation Counsel's decision. But neither the trial court nor the Court of Appeals stated that Article 78 is the exclusive means of raising the issue; rather the issue was raised in that case by way of an Article 78 proceeding, but neither court stated that Article 78 is the exclusive means to challenge the Corporation Counsel's determination.

The only reported federal case the Court has found which addresses the issue whether an Article 78 proceeding is the exclusive means of challenging the Corporation Counsel's determination is *Mercurio v. City of New York*, 592 F.Supp. 1243 (E.D. N.Y.1984), *aff'd*, 758 F.2d 862 (2d Cir.1985). In that case, Judge Nickerson did not decide the issue because he found that even if Article 78 was not the only means by which such a challenge could be raised, the City employees in that case were not entitled to indemnification from the City.

An Arguably analogous New York case is the recent decision in *Mathis v. State*, 531 N.Y.S.2d 680, (Sup.Ct.Albany Cty. 1988). In that case, the court held:

"the procedure when a prison guard is sued for assault and a civil rights violation, and the Attorney General refuses to provide a defense under section 17 [of the N.Y. Public Officers Law] upon his own finding that the guard was acting outside the scope of employment, is for the guard to either make a motion in the pending federal action, or bring an article 78 proceeding in this Court to challenge the denial of a defense."

*Id.* at 683. Yet there are substantial differences between section 17 of the Public Officers Law and section 50–k of the General Municipal Law, and these distinctions may require a different rule as to section 50–k.[5] However, the Court need not decide that issue because even if Article 78 is not the exclusive means of challenging the determination of the Corporation Counsel not to defend and indemnify a City employee, Quinones has failed to state a claim against the City that can withstand the motion for summary judgment.

Quinones contends, however, that summary judgment cannot be entered against him because there is a genuine dispute as to a material fact. It is certainly true that facts are in dispute in this case. Quinones and Kelly have given vastly different accounts of the events of April 26, 1983. But the existence of a factual dispute precludes entry of summary judgment only when the factual dispute relates to an issue which is material under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

On a motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure,[6] the party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, deposi-

---

**5.** Section 17 of the Public Officers Law expressly states that certain determinations by the attorney general as to whether to represent state employees may be made by appropriate motion or by special proceeding. Section 50–k of the General Municipal Law contains no such statement.

**6.** Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

tions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The burden then shifts to the nonmoving party to show that there is a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. at 2510.

The Supreme Court has noted that the "[s]ummary judgment procedure is properly regarded, not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which were designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555 (quoting Fed.R.Civ.P. 1) (citation omitted). "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson,* 477 U.S. at 247–49, 106 S.Ct. at 2509–10; *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985)). The mere possibility that a factual issue may exist, without more, will not defeat a motion for summary judgment. *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir. 1982).

When "a motion for summary judgment is made ... an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). Similarly, the Second Circuit stated in *Securities and Exchange Commission v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978), that the "policy favoring efficient resolution of disputes, which is the cornerstone of the summary judgment procedure, would be completely undermined if unsubstantiated assertions were sufficient to compel a trial." *See also Attorney General v. Irish Northern Aid Committee,* 668 F.2d 159 (2d Cir.1982); *Feick v. Fleener,* 653 F.2d 69 (2d Cir.1981); *Friedman v. Beame,* 558 F.2d 1107 (2d Cir.1977).

Where it is clear from the evidence presented to the court on a motion for summary judgment that the movant would be entitled to a directed verdict, should the case proceed to trial, the motion may properly be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

As the Supreme Court held in *Anderson,* "the inquiry involved in ruling on a motion for summary judgment or a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." 477 U.S. 252, 106 S.Ct. at 2512. The standard to be applied in determining whether the Corporation Counsel's decision not to defend Quinones was set forth by the New York Court of Appeals in *Williams v. New York,* 64 N.Y.2d 800, 486 N.Y.S.2d 918, 476 N.E. 2d 317 (1985).

In *Williams,* the court held that

[t]he issue of whether petitioner's acts were committed within the scope of his public employment and the discharge of his duties raises factual questions. Whether he was so acting and thus was entitled to representation by the Corporation Counsel and indemnification by the city are to be determined in the first instance by the Corporation Counsel (*see* General Municipal Law § 50–k[2] ) and his determination may be set aside only if it lacks a factual basis, and in that sense, is arbitrary and capricious. The Corporation Counsel's determination here that petitioner was not acting within the scope of his employment and in the

discharge of his duties cannot be characterized as unreasonable in light of Kinard's acquittal of the criminal charges. *Williams*, 64 N.Y.2d at 802, 486 N.Y.S.2d at 919, 476 N.E.2d at 318 (citation omitted). *See also Hassan v. Fraccola*, 851 F.2d 602, 603–04 (2d Cir.1988).

Application of this standard to the instant case makes it clear that the Corporation Counsel's determination was not arbitrary and capricious, and therefore cannot be overturned. It is undisputed that the incident on April 26, 1983 arose from a prior personal dispute between Quinones and Kelly.[7] In *Stavitz v. City of New York*, 98 A.D.2d 529, 471 N.Y.S.2d 272 (1st Dep't 1984), the court held that "where an employee's conduct is brought on by a matter wholly personal in nature, the source of which is not job-related, his actions cannot be said to fall within the scope of his employment." 98 A.D.2d at 531, 471 N.Y.S.2d at 274.

Even accepting Quinones' version of the facts, as the Court is required to do on a motion for summary judgment, it is clear beyond peradventure that the Corporation Counsel did not act arbitrarily or capriciously in declining to defend Quinones.

## CONCLUSION

Accordingly, the motion of the City for summary judgment is granted, and it is ordered that the cross-claim against the City be dismissed. Counsel for the Kelly and Quinones are ordered to appear at a pre-trial conference on September 23, 1988 at 3:00 p.m. in Courtroom 36.

SO ORDERED.

---

**7.** Quinones has not challenged the assertions in Kelly's deposition about the fight in 1981, Where a party fails to controvert statements in support of a motion, although he had an opportunity to do so in his opposing affidavit, the facts set forth in the affidavit in support of the motion must be taken as true. *Saratoga Harness Racing Ass'n v. Moss*, 26 A.D.2d 486, 275 N.Y.S.2d 888 (3d Dep't 1966), *aff'd,* 20 N.Y.2d 733, 283 N.Y.S.2d 55, 229 N.E.2d 620 (1967); *see also Kappus v. Western Hills Oil, Inc.,* 24 F.R.D. 123 (E.D.Wis.1959).