Unise GAMBLING, Plaintiff,

v.

George CORNISH et al., Defendants.

No. 74 C 3495.

United States District Court, N. D. Illinois, E. D.

Feb. 17, 1977.

**1154**

Robert C. Howard, Chicago, Ill., for plaintiff.

Kenneth J. Cortesi, Asst. Corp. Counsel, Chicago, Ill., City of Chicago, for the City of Chicago.

## AMENDED MEMORANDUM OPINION

GRADY, District Judge.

The defendant City of Chicago has moved for summary judgment on Count III of plaintiff's complaint. Count III is a diversity claim in which plaintiff seeks damages from the City of Chicago under the theory of respondeat superior for intentional torts allegedly committed by two Chicago police officers, also named as defendants. We will grant summary judgment for the City. In granting summary judgment, we rely only on the facts which plaintiff submitted with her motion and testified to in her deposition.

### FACTS

The following summarizes plaintiff's version of the facts. Plaintiff and two friends were approached by two men in a car. The men were the defendants Webster and Cornish, "off-duty" Chicago policemen. When Webster asked the plaintiff for a date and she refused, Webster grabbed her wrist and threatened to shoot her. Her two friends reacted by throwing a rock at the car. Cornish then jumped out of his car and started shooting at the friends. The friends fled and plaintiff was pulled into the car. Then eight or nine police cars arrived at the scene. Approaching the car where plaintiff was sitting, a police officer in uniform drew his gun on Webster and asked what was happening. Webster identified himself and Cornish as police officers, displaying his police badge and identification card. Webster explained that he had the plaintiff under arrest for throwing a rock at his car. He asked for the location of the nearest police station. The officer gave him this information and left the scene. Webster and Cornish then drove plaintiff to a beach, where Webster raped her and Cornish forced her to commit other sexual acts.

### DISCUSSION

■ Defendant's first contention is that plaintiff is barred under Ill.Rev.Stat. chap. 85 §§ 8–102 and 103 from suing the City, because she used an alias in her notice of claim to the City. In light of the recent Illinois Supreme Court cases, *Saragusa v. City of Chicago*, 63 Ill.2d 288, 348 N.E.2d 176 (1976) and *Dunbar v. Reiser*, 64 Ill.2d 230, 1 Ill.Dec. 89, 356 N.E.2d 89 (1976), we have concluded that plaintiff satisfied the Illinois notice requirement when she filed suit within a year of the incident.

■ Defendant's second argument is that the City must be dismissed because Webster and Cornish, in committing the alleged torts of false arrest, false imprisonment and sexual assault, were not acting within the scope of their employment. We agree. Because neither party to this motion controverts the facts, the issue of whether Webster and Cornish were acting within the scope of their employment is ripe for summary judgment.

The Court of Appeals for the Seventh Circuit has stated the rule of law in Illinois defining the scope of an employer's liability under the theory of respondeat superior:

[T]he rule in Illinois is that the employer is liable for the negligent, malicious, or criminal acts of its employees when such acts are committed during the course of employment and in furtherance of the business of the employer; but when the act is committed solely for the benefit of

the employee, the employer is not liable to the injured third party.

*Bremen State Bank v. Hartford Accident and Indemnity Co.,* 427 F.2d 425, 428 (7th Cir. 1970). The rule in Illinois is also consonant with the Restatement of Agency. Section 245 of the Restatement provides:

A master is subject to liability for the intended tortious harm by a servant to the person or things of another by an act done in connection with the servant's employment, although the act was unauthorized, if the act was not unexpectable in view of the duties of the servant.

Restatement of Agency 2d, § 245 (1958). Comment (f) to Section 245 qualifies this statement:

The liability of a master for the use of force by a servant is not prevented by the fact that the servant acts in part because of a personal motive such as revenge. The master, however, is relieved from liability under the rule stated in this Section if the servant has no intent to act on his master's behalf, although the events from which the tortious act follows arise while the servant is acting in the employment and the servant becomes angry because of them. The fact that the servant acts in an outrageous manner or inflicts a punishment out of all proportion to the necessities of his master's business is evidence indicating that the servant has departed from the scope of employment in performing the act.

Restatement of Agency 2d, § 245, comment (f) (1958). *See also Vargas v. Correa,* 416 F.Supp. 266 (S.D.N.Y.1976).

Applying the rule of respondeat superior to the facts in this case, we conclude as a matter of law that Webster and Cornish were not acting within the scope of their employment at the time of the acts complained of. Even if we assume that Webster and Cornish were placed "on-duty," and thus were "servants" of the City when Webster assured the police officer he intended to take plaintiff to the police sta-tion, their alleged conduct toward the plaintiff was too outrageous for it to be considered "expectable" under the Second Restatement test. Furthermore, it is clear that Webster and Cornish had no intention to further the City's interest but were motivated solely by a desire to gratify their personal interests.

We realize that the status of Webster and Cornish as policemen was what enabled them to retain custody of plaintiff after the arrival of other officers. However, this fact alone cannot establish that Webster and Cornish were acting within the scope of their employment. We share the concern of the court in *Vargas v. Correa,* 416 F.Supp. 266, 272 (S.D.N.Y.1976), that while the doctrine of respondeat superior should be broadly applied when a police officer is involved, the line must be drawn somewhere. Otherwise, the court would be imposing strict liability on the City for the actions of its police officers. We believe the personal motivation test provides the appropriate criterion in a case involving conduct of the kind alleged here.

Counts I and II of the original complaint allege the same facts and seek recovery against the City on the theory that the acts of the defendant police officers violated plaintiff's rights under the Fourteenth Amendment. Summary judgment should be entered for the City on these Counts, even though it has not moved for that relief.[1] The only basis for liability of the City under the Fourteenth Amendment would be under the doctrine of respondeat superior. There is no allegation that the City itself committed any act against the plaintiff, and its liability could arise only vicariously, just as in the case of the diversity claim. We conclude, therefore, that plaintiff's constitutional claims against the City in Counts I and II of the original complaint must fail for the reason that the defendant police officers were, as a matter of law, acting outside the scope of their employment.

---

1. The City was dismissed from these Counts at an earlier stage of this litigation. Upon reconsideration, both Counts were reinstated against the City, but not until after the motion for summary judgment on the amended complaint had been filed.

1156

Summary judgment is granted in favor of the defendant City of Chicago and against the plaintiff on Counts I and II of the original complaint and Count III of the first amended complaint.