ROGERS, APPELLEE, *v.* CITY OF YOUNGSTOWN ET AL., APPELLANTS.

[Cite as *Rogers v. Youngstown* (1991), 61 Ohio St.3d 205.]

(No. 90–1500—Submitted May 8, 1991—Decided July 31, 1991.)

*Paul J. Gains,* for appellee.

*Edwin Romero,* Law Director, and *Cheryl L. Waite,* for appellants.

*Paul L. Cox,* urging affirmance for *amicus curiae,* Fraternal Order of Police of Ohio, Inc.

*Calfee, Halter & Griswold, John E. Gotherman, Joseph A. Castrodale* and *Anthony J. Lacerva,* urging reversal for *amicus curiae,* Ohio Municipal League.

DOUGLAS, J.   The primary question presented for our review is whether the city had a duty, pursuant to R.C. 2744.07(A)(1), to defend appellee in the suit filed in federal court by Rogers, appellee's sister.   R.C. 2744.07(A)(1) provides, in relevant part, that:

"Except as otherwise provided in this division, a political subdivision *shall provide for the defense of an employee, in any state or federal court, in any civil action or proceeding* to recover damages for injury, death, or loss to persons or property allegedly caused by an act or omission of the employee in connection with a governmental or proprietary function if the act or omission occurred *or is alleged to have occurred while the employee was acting in good faith and not manifestly outside the scope of his employ-ment or official responsibilities.*   Amounts expended by a political subdivision in the defense of its employees shall be from funds appropriated for this purpose or from proceeds of insurance.   * * *" (Emphasis added.)

The city contends that the court of appeals and the trial court erred in concluding that the city wrongfully refused to defend appellee in the federal action. The city argues that R.C. 2744.07(A)(1) does not impose a duty upon it to defend the appellee because appellee's admissions elicited during the internal affairs investigation and during discovery in the federal action support a finding that appellee was not acting in "good faith," and was "manifestly outside the scope of his employment." Thus, according to the city, it was "appropriate" to refuse to defend appellee or provide him with defense counsel during the federal court action. The city also argues that a duty did not exist because Rogers did not specifically allege in her federal complaint that appellee was acting in good faith. It is the city's contention that "[t]his lack of 'good faith' is the fatal flaw in [a]ppellee's case."

We believe the city's arguments lack merit. For the most part, the city chooses not to focus on the allegations contained in the complaint itself but, rather, finds support for its position by dwelling upon matters that transpired prior to and after the federal complaint was filed. In so doing, the city ignores the mandatory and disjunctive language contained in R.C. 2744.-07(A)(1).

R.C. 2744.07(A)(1) is clear and unequivocally sets forth that "a political subdivision *shall* provide for the defense of an employee, in any state or federal court * * * if the act or omission occurred *or is alleged* to have occurred while the employee was acting in good faith and not manifestly outside the scope of his [or her] employment." (Emphasis added.) As can be gleaned, the duty of a political subdivision to defend one of its employees may arise from a reading of allegations contained in a complaint filed by a plaintiff who seeks redress from the subdivision's employee. Accordingly, the question presented in the instant cause is whether the allegations contained in Rogers's complaint triggered a duty on the part of the city to defend or provide appellee with legal counsel in the federal suit.

Turning our attention to the allegations contained in Rogers's federal complaint, we answer this question in the affirmative and find that the city, pursuant to R.C. 2744.07(A)(1), did, indeed, breach a duty to defend or provide appellee with legal counsel. In the "Introduction" of the complaint, Rogers alleged that appellee " * * * unlawfully assaulted and beat Plaintiff, in violation of Plaintiff's constitutional rights, while * * * [appellee] was in uniform and on duty as a police officer of the Youngstown Police Department." In paragraph six of the complaint, Rogers averred that appellee was a "duly appointed officer of the police department" and that appellee was "acting in such capacity as the agent, servant, and employee of the Defendants." Rogers also alleged, in paragraph ten, that appellee "arrived at her

home in a police department vehicle" and he was in "uniform and armed." Moreover, in paragraph twenty-eight, Rogers charged that appellee " * * * *while acting within the scope of his employment* by the Defendant City of Youngstown assaulted and battered the Plaintiff." (Emphasis added.)

The city's argument that a duty to defend did not exist because Rogers did not specifically set forth in her complaint that appellee was acting in "good faith" is not well-taken. We cannot conceive a situation where a plaintiff who sues a political subdivision and an employee of the subdivision would allege, in his or her complaint, that the employee was acting in good faith. Such an allegation would be incongruous with suing the employee in his or her individual capacity.

Thus, we believe that even though Rogers did not specifically allege that appellee was acting in good faith, the city unjustifiably refused to defend appellee and, for this reason, the city failed to comply with the mandates of R.C. 2744.07(A)(1). Therefore, we hold where a political subdivision wrongfully refuses to defend a suit commenced against a police officer employed by the subdivision, and the officer subsequently brings a declaratory judgment action against the subdivision to determine the subdivision's obligation to defend, the political subdivision must pay the attorney fees, expenses and costs incurred by the police officer, both in the action which the subdivision failed to defend and in the declaratory judgment action.

Having determined that the city's refusal to defend appellee was a violation of R.C. 2744.07(A)(1), we now turn our attention to the city's contention that the court of appeals erred in finding that the $1,500 received by the appellee from the F.O.P. was not deductible from appellee's award. It is the city's contention that the money advanced by the F.O.P. is a benefit pursuant to R.C. 2744.05(B)[1] and, therefore, the city should be entitled to set off this advance against any award granted appellee.

The city's contention is misplaced. In *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 566 N.E.2d 154, we recently addressed what constitutes "benefits" in the context of R.C. 2744.05(B) and stated:

---

1. R.C. 2744.05 provides in relevant part:

    "Notwithstanding any other provisions of the Revised Code or rules of a court to the contrary, in an action against a political subdivision to recover damages for injury, death, or loss to persons or property caused by an act or omission in connection with a governmental or proprietary function:
    " * * *

    "(B) If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. * * * "

"In order to determine what funds come under the purview of the collateral source setoff provisions of R.C. 2744.05(B), we must first ascertain what the term 'benefits' means in relation to the statute. The term 'benefits' is nowhere defined in the statute. However, a benefit has been defined elsewhere as '[f]inancial assistance received in time of sickness, disability, unemployment, etc. either from insurance or public programs such as social security.' Black's Law Dictionary (6 Ed.1990) 158. Under this definition, which we adopt here, neither the gift from the decedent's employer nor the payment of funeral expenses by the decedent's father constituted benefits under R.C. 2744.05(B), and the court of appeals was correct in restoring these funds to the decedent's estate." *Id.* at 98, 566 N.E.2d at 161.

In the case at bar, the $1,500 received by appellee from the F.O.P. does not fall within the definition of "benefits" as adopted by this court in *Vogel.* It appears, from a reading of the opinions of the trial court and the court of appeals, that the F.O.P. would be reimbursed by appellee upon a finding that the city wrongfully refused to defend appellee. What the city characterizes as a benefit is actually nothing more than a conditional loan. Thus, we find that the court of appeals did not err in concluding that the money advanced to appellee by the F.O.P. should not be deducted from appellee's award.

Further, we note that the trial court ruled, and the court of appeals agreed, that interest on appellee's award should accrue from the date on which each service was rendered by appellee's legal counsel. The representation of appellee having taken place over some period of time, it is somewhat difficult to determine the date or dates being referenced by the trial court and court of appeals as to when the service was "rendered." Nevertheless, the question as to when interest should commence on the amount due appellee is easily answered by reading the statute. Clearly, R.C. 1343.03(B) and (C), by their explicit terms, only apply where tortious conduct is involved and, thus, they are not applicable to this case. R.C. 1343.03(A) [2] does, however, apply. Since here we have a *judgment* arising out of " * * * a contract or other transaction * * *," appellee is entitled to interest at the rate of ten percent per

---

2. R.C. 1343.03(A) provides:

"In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable upon any bond, bill, note, or other instrument of writing, upon any book account, upon any settlement between parties, upon all verbal contracts entered into, and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum, and no more, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract."

annum computed from the date of the judgment, March 21, 1989, until paid by appellants.

Finally, the court of appeals ordered that this cause be remanded to the trial court to further determine what attorney fees, if any, are due appellee by appellants for defending the appeal in the court of appeals. We also agree with the court of appeals' judgment in this regard and, in addition, remand the cause to the trial court for further consideration as to what attorney fees, if any, are found by the trial court to be due appellee from appellants for defense of the appeal to this court. Should the trial court find that attorney fees are due appellee for defending his judgment in this court and/or the court of appeals, then the trial court's judgment entry shall cause interest to start to accrue, pursuant to R.C. 1343.03(A), from the date of the entry (or entries) until paid by appellants.

In all other respects, the judgment of the court of appeals is affirmed.

*Judgment affirmed*
*and cause remanded.*

SWEENEY, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HARSHA and WRIGHT, JJ., dissent.

WILLIAM H. HARSHA, J., of the Fourth Appellate District, sitting for HOLMES, J.

WRIGHT, J., dissenting. R.C. Chapter 2744 codifies sovereign immunity applicable to political subdivisions. Ignoring the nuances of its particulars, R.C. Chapter 2744 holds political subdivisions liable for the negligence of their employees acting within the scope of employment. Political subdivisions retain immunity for the acts of their employees that are willful or wanton or are manifestly outside the scope of employment. See R.C. 2744.02. R.C. 2744.07(A)(2) then requires political subdivisions to indemnify employees from liability for negligent acts not manifestly outside the scope of employment.

Today we are asked to fit R.C. 2744.07(A)(1) and (C) into this statutory framework. At the least, R.C. 2744.07(A)(1) requires political subdivisions to defend an employee who is sued because of acts committed in good faith and within the scope of employment. If the political subdivision fails to do so, the employee may bring suit to recover these expenses under R.C. 2744.07(C).

This case is not so simple however. This case asks what R.C. 2744.07(A)(1) requires of a political subdivision where a complaint against an employee alleges that the employee acted within the scope of employment but is silent on good faith, and the political subdivision does not believe the employee acted either in good faith or within the scope of employment.

A literal reading of R.C. 2744.07(A)(1) would require a political subdivision to defend an employee if (1) the employee actually acted within the scope of employment and in good faith, or (2) if the charging complaint alleges that the employee was acting in good faith and within the scope of employment. Basing its decision on the second test, the majority follows the literal reading in part but, with cursory explanation, drops the requirement that a complaint allege good faith.

There are three flaws in the majority's analysis. Initially, and most obviously, the statute requires that good faith exist or at least be pled. No such allegation was made. I am disturbed at the ease with which the majority is able to redact such plain language from a statute.

Secondly, in assessing whether an allegation was made the majority looks only for the magic words "[within] the scope of his employment" to trigger the duty to defend, ignoring the facts alleged in favor of these ostensibly magic words.

To illustrate this point I posit a hypothetical. Suppose a complaint is filed against a municipal custodial worker alleging that the worker, while wearing his work uniform, acting in the scope of employment, and acting in good faith, negligently stabbed the plaintiff with a knife during a drug deal. Irrespective of the words "good faith" and "scope of employment," it is manifest from the face of the hypothetical complaint that the stabbing was committed outside the scope of employment and not in good faith. The same is true in this case: appellee engaged in a classic frolic and detour, travelling to his mother's home so as to engage in family matters, whereupon he got into a fight with his sister. Despite the "scope of employment" language in the complaint, appellee's behavior was manifestly outside the scope of his employment.

Lastly, the majority's reading of R.C. 2744.07(A)(1) is poor public policy that was certainly not intended by the statute. When R.C. 2744.07(A)(1) is read in conjunction with R.C. Chapter 2744 as a whole, I find it inconceivable that the General Assembly intended political subdivisions to pay anything, including attorney fees, for injurious acts of their employees committed in bad faith or manifestly outside the scope of employment.

R.C. 2744.01(B) defines "employee" as a person "who is authorized to act and is acting within the scope of his employment for a political subdivision." Consequently a person is not an employee within the meaning of the chapter, and therefore eligible for attorney fees, unless he or she actually was acting within the scope of employment. Additionally, an employee may only be indemnified for acts within the scope of employment and in good faith. R.C. 2744.07(B). Lastly, the legislature provided a separate cause of action to determine the wrongfulness of a failure to defend. R.C. 2744.07(C). Presum-

ably this cause of action was intended to be more than a search through a complaint for the words "scope of employment."

To the contrary, I interpret R.C. 2744.07(A)(1) as guaranteeing an employee legal expenses only where the employee actually acted in good faith and within the scope of employment. The language pertaining to allegations allows the political subdivision to go ahead and defend when the complaint is filed before it is able to investigate the facts of the case. Ultimately, however, a political subdivision need not defend an employee where the employee acted in bad faith or outside the scope of employment and, where a political subdivision refuses to defend, R.C. 2744.07(C) is available to litigate good faith and scope of employment.

Because I cannot countenance R.C. 2744.07 being interpreted so as to require the citizens of Youngstown to pay for appellee's legal expenses, I respectfully dissent.

MOYER, C.J., and HARSHA, J., concur in the foregoing dissenting opinion.