WILLIAM DELONEY et al., Plaintiffs-Appellants, v. BOARD OF EDUCATION OF THORNTON TOWNSHIP, School District No. 205, Cook County, Illinois, Defendants-Appellees.

First District (5th Division)   No. 1—94—4219

Opinion filed May 31, 1996.

Marsha A. Tolchin, of Kaplan & Begy, of Chicago, for appellants.

Raymond A. Hauser and Douglas D. Danielson, both of Scariano, Kula, Ellch & Himes, Chartered, of Chicago, for appellees.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs William Deloney and Kaplan & Begy, appointed counsel to Deloney,[1] filed this action against defendant Board of Education of Thornton Township, School District No. 205 (the Board), seeking to recover attorney fees and costs incurred by Kaplan & Begy in its successful representation of Deloney, a former employee of the defendant Board, in a civil rights action brought against Deloney by a student enrolled in school district No. 205. Upon both parties' motions for summary judgment, the trial court entered judgment denying plaintiffs' motion and granting defendant's cross-motion for summary judgment. The plaintiffs appeal.

The first issue presented on appeal is whether the allegations of the civil rights complaint filed against the school employee categorically control the school board's duty to indemnify the employee for defense costs. In the event that the complaint is so controlling, the second issue presented is whether the school board must indemnify its employee where the civil rights complaint alleged that the employee's misconduct occurred within the scope of his employment but characterized the wrongful conduct by the employee as being aggravated criminal sexual abuse.

The complaint seeking indemnification, filed on August 5, 1993, alleged that Deloney was employed as a truant officer by the Board from January 28, 1985, to March 28, 1989. The complaint further alleged that on August 8, 1991, a civil rights lawsuit was filed against Deloney based on conduct that was alleged to have occurred while he was employed by the Board and within the scope of that employment. A copy of the civil rights lawsuit was attached to the complaint. In the civil rights lawsuit the plaintiff therein (hereinafter

---

[1]Kaplan & Begy were appointed to represent Deloney after the trial court found Deloney to be indigent. At the time of the appointment, the firm was known as Adler, Kaplan & Begy.

referred to as the civil rights plaintiff) alleged that in 1987, she was 16 years old and sought to be enrolled in Thornton High School. She alleged that Deloney, as part of his duties for the Board, reviewed her enrollment application. Additional allegations in the civil rights lawsuit, relevant to the instant appeal, provided:

"6. In the course of reviewing plaintiff's enrollment request as part of his duties for School District Number 205, Deloney met with plaintiff and told her that he would not let her enroll unless she had sex with him.

7. Plaintiff gave in to his demands \*\*\*.

8. Plaintiff continued to give in to Deloney's demands until July of 1988 \*\*\*.

\*\*\*

10. In December of 1988, defendant Deloney was indicted for aggravated criminal sexual assault and official misconduct. In May of 1990, Deloney pleaded guilty to aggravated criminal sexual abuse."

The complaint in the case at bar alleged that the Board refused Kaplan & Begy's tendered defense of the civil rights lawsuit filed against Deloney and that Kaplan & Begy defended Deloney and obtained a jury verdict in Deloney's favor on September 30, 1992. That verdict was upheld on appeal.

■ The instant action for attorney fees and costs is premised on the Board's statutory duty to defend and indemnify its employees for conduct occurring within the scope of employment. Those duties are set forth in section 10—20.20 of the Illinois School Code (Ill. Rev. Stat. 1991, ch. 122, par. 10—20.20 (now 105 ILCS 5/10—20.20 (West 1994))) (the School Code).[2] That section of the School Code provides that it is the duty of the school board to:

"indemnify \*\*\* employees \*\*\* against civil rights damage claims and suits, constitutional rights damage claims and suits \*\*\*, including defense thereof, when damages are sought for negligent

---

[2]Section 2—302 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1991, ch. 85, par. 2—302 (now 745 ILCS 10/2—302 (West 1994))) also provides for the defense and indemnification of public employees. However, the public entity's obligations under that provision are not mandatory but permissive. *Board of Trustees, Village of Bolingbrook Police Pension Fund v. Underwood, Neuhaus & Co.*, 742 F. Supp. 984, 987 (N.D. Ill. 1990) (under section 2—302 of the Tort Immunity Act, municipality is merely authorized to *elect* to defend or indemnify if it finds such action to be "appropriate in a particular case"); *Hall v. Sanchez*, 708 F. Supp. 922 (N.D. Ill. 1989) (section 2—302 of Tort Immunity Act *allows* city to appear and defend employees).

or wrongful acts alleged to have been committed in the scope of employment or under the direction of the board." Ill. Rev. Stat. 1991, ch. 122, par. 10—20.20 (now 105 ILCS 5/10—20.20 (West 1994)).

In reliance on this provision, the plaintiffs filed their motion for summary judgment and argued that, as a matter of law, the Board had a statutory duty to defend Deloney in the civil rights action based on allegations therein that Deloney was acting under color of his authority as a truant officer and within the scope of his employment. In response to that motion and in support of its cross-motion for summary judgment, the Board argued that, as a matter of law, the plaintiffs' action was time-barred and that the Board did not have a statutory duty to defend Deloney because the alleged conduct, Deloney's sexual relationship with the student, occurred outside the scope of employment and after Deloney had completed his truant officer duties. In support of its response and cross-motion, the Board attached the transcript of the civil rights trial and cited to Deloney's defense theory and his testimony that: (1) he verified the student's address listed on her application for admission during the first week of December 1987; (2) the student called him and invited him to lunch at her house on December 18, 1987; (3) he did not go to the student's home on December 18, 1987, to pick up papers regarding school admissions; (4) the sexual relationship with the student was not based on his position of authority; (5) he and the student were "attracted to each other"; and (6) at the time he and the student had a relationship, she was already enrolled in school.[3] In further support of its contention that Deloney's conduct was outside the scope of employment, the Board argued that Deloney's admission and guilty plea to aggravated criminal sexual abuse, a felony, could never be conduct occurring within the scope of Deloney's duties as a truant officer that would impose a duty upon the Board to defend and indemnify him.

In denying plaintiffs' motion for summary judgment and granting the Board's cross-motion for summary judgment, the trial court held that the Board did not owe a duty to indemnify and defend Deloney in the civil rights lawsuit based upon the mere allegation in the civil rights complaint that Deloney's conduct occurred within the scope of employment since Deloney admitted to the alleged conduct but argued that it occurred after his duties had concluded. The trial

---

[3]The civil rights plaintiff testified and presented evidence to refute Deloney's testimony. However, as noted above, the jury returned a verdict in favor of Deloney.

court also held that it would be against public policy and common sense to require the Board to defend Deloney for conduct that formed the basis of his guilty plea to a criminal act.[4]

A motion for summary judgment may be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005 (West 1992); *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606 (1995). The trial court must construe the pleadings, depositions and affidavits in the light most favorable to the nonmoving party. *E.g., First State Insurance Co. v. Montgomery Ward & Co.*, 267 Ill. App. 3d 851, 642 N.E.2d 715 (1994). Appellate review of an order granting summary judgment is *de novo* such that the appellate court must consider anew the facts and law related to the case and determine whether the trial court was correct. *E.g., Hesselink v. R.L. Perlow Corp.*, 265 Ill. App. 3d 473, 637 N.E.2d 575 (1994); *Shull v. Harristown Township*, 223 Ill. App. 3d 819, 585 N.E.2d 1164 (1992).

On appeal, the plaintiffs argue that the grant of summary judgment to the defendant Board was erroneous and contrary to the express language of the statute, which imposes a duty upon the Board to defend "when damages are sought for negligent or wrongful acts *alleged to have been* committed in the scope of employment or under the direction of the board." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 122, par. 10—20.20 (now 105 ILCS 5/10—20.20 (West 1994)). Plaintiffs argue that the Board has a duty to defend whenever scope-of-employment allegations are made in the complaint and regardless of whether the evidence would show that the employee was acting outside the scope of his employment when the alleged conduct occurred.

The parties in the instant appeal agree that no Illinois case has addressed the issue here presented. As a result, they argue general principles of statutory construction. Those rules require that the court ascertain and give effect to the intent of the legislature (*e.g., Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 634 N.E.2d 712 (1994)) as evidenced by the plain and ordinary meaning of

---

[4]While granting summary judgment to the defendant Board, the court rejected the Board's alternative statute of limitations argument. Although the Board raises its statute of limitations argument as a further basis to affirm the grant of summary judgment, we do not reach that issue since, as discussed herein, we affirm the grant of summary judgment to the Board on another ground.

the statute's language (*e.g.*, *McIntosh v. A&M Insulation Co.*, 244 Ill. App. 3d 247, 614 N.E.2d 203 (1993)). As stated in *Buckellew v. Board of Education of Georgetown-Ridge Farm Community Unit School District No. 4*, 215 Ill. App. 3d 506, 511, 575 N.E.2d 556, 559 (1991):

"[T]he court must construe the statute as it is and may not, under the guise of construction, supply omissions, remedy defects, annex new provisions, substitute different provisions, add exceptions, limitations, or conditions, or otherwise change the law so as to depart from the plain meaning of the language employed in the statute. [Citations.]"

As set forth above, section 10—20.20 of the School Code imposes a duty upon the Board to indemnify its employees against damage claims or suits, including the defense thereof, "when damages are sought for negligent or wrongful acts alleged to have been committed in the scope of employment or under the direction of the board." The plain meaning of that language suggests that the Board's duties to indemnify and defend are triggered when scope-of-employment allegations are made in the damage claim or suit. Similar statutory language received that construction in *Hassan v. Fraccola*, 851 F.2d 602 (2d Cir. 1988). The statute there required the public entity to provide for the defense of its employee in any civil action or proceeding "arising out of any alleged act or omission which occurred or allegedly occurred while the employee was acting within the scope of his public employment or duties." N.Y. Pub. Off. L. § 18(3)(a) (McKinney 1988), cited in *Hassan v. Fraccola*, 851 F.2d at 603.

The underlying complaint in *Hassan*, a civil rights lawsuit, alleged that the defendant police officer had filed a false police report and unlawfully detained, searched and interrogated the plaintiff. The defendant officer filed a cross-claim against the city seeking compensation for his defense costs because the city refused to defend him. Concluding that the underlying civil rights complaint contained scope-of-employment allegations, the court thereupon considered whether the city's duty to defend the officer was conclusively triggered by the civil rights complaint alone or "whether the complaint merely put the City on notice, allowing it to make its own determination of fact as to whether the defendant [officer] was acting within the scope of his *** employment before assuming the duty to defend." 851 F.2d at 603. The court concluded:

"Section 18(3)(a) provides that a municipality will furnish an employee with a defense in a lawsuit arising from certain 'alleged act[s] or omission[s].' The language immediately following can be reasonably read only as establishing the situations within which a defense will be provided, so that acts 'which occurred or allegedly

occurred' within the scope of the employee's duties are those covered. As the words 'allegedly occurred' would have no purpose if the municipality could decide for itself whether the questioned acts occurred within the scope of the employee's duties *** the only reasonable interpretation of section 18(3)(a) is that the allegations in the complaint trigger the City's duty." 851 F.2d at 604.

The New York statute and the Illinois School Code provisions are nearly identical in that the former statute requires the public entity to provide for the defense of its employee when the wrongful act *"allegedly occurred* while the employee was acting within the scope of his public employment" (emphasis added) (N.Y. Pub. Off. L. § 18(3)(a) (McKinney 1988)) and the latter statute requires the public entity to provide for the defense of its employee when the wrongful act is *"alleged to have been committed* in the scope of employment" (emphasis added) (Ill. Rev. Stat. 1991, ch. 122, par. 10—20.20 (now 105 ILCS 5/10—20.20 (West 1994)). As we agree with the court's statutory construction in *Hassan v. Fraccola*, that the duty arises when scope of employment is alleged, we also agree that the complaint, wherein the allegations are made, is the controlling instrument. See also *Rogers v. City of Youngstown*, 61 Ohio St. 3d 205, 574 N.E.2d 451 (1991) (allegations in complaint trigger duty to provide for the defense of employee where act or omission "is alleged to have occurred while the employee was acting in good faith and not manifestly outside the scope of his employment" (Ohio Rev. Code Ann. § 2744.07(A)(1) (Anderson 1988)).

Further support for the conclusion that the legislature intended the allegations of the complaint to trigger the Board's duty to indemnify can be found by comparing the language in section 10—20.20 of the School Code with its predecessor provision. In accordance with general rules of statutory construction, when a statute is amended, it is presumed that the legislature intended to effect some change in the law as it formerly existed. *Powell v. Board of Education of the City of Peoria, District 150*, 189 Ill. App. 3d 802, 545 N.E.2d 767 (1989); see *Forest City Erectors v. Industrial Comm'n*, 264 Ill. App. 3d 436, 636 N.E.2d 969 (1994). Here, the predecessor statute to section 10—20.20 imposed a duty upon the school board to insure its employee "against financial loss and expenses *** arising out of any *** suit *** by reason of alleged negligence or alleged wrongful act *** *provided such *** employee *** was acting under the direction of the board within the course or scope of his duties.*" (Emphasis added.) Ill. Rev. Stat. 1963, ch. 122, par. 10—21.6. The phrase "provided such" employee was acting under the direction of the board or within

the scope of his duties would suggest that the board's duties under that statute did not arise unless "direction of the board" or "scope of duties" was established. By comparison, the absence of the words "provided that," as well as the presence of the word "alleged" in the current provision, implies that the legislature intended to change the board's duty by denying any discretion to the school board to determine whether to provide a defense in the damage claim and to compel the board to indemnify whenever "scope of employment" is alleged.

The civil rights complaint in the instant case contained allegations of scope of employment. As the Board's duties were triggered by the allegations in that complaint, neither the Board nor the trial court could look beyond that instrument for purposes of determining whether the Board had a duty to provide for Deloney's defense in that action. The determination of that issue should not have been influenced by evidence presented during the civil rights trial wherein Deloney denied he was acting within the scope of employment when he committed the alleged wrongful acts nor should it have been influenced by the jury verdict in favor of Deloney. See *Rogers v. Youngstown*, 61 Ohio St. 3d 205, 574 N.E.2d 451 (duty to defend triggered by civil rights complaint; matters that transpired before or after filing of that complaint irrelevant); *Hassan v. Fraccola*, 851 F.2d 602. Thus, to the extent the trial court considered the Board's argument and supporting submissions that pertained to the civil rights litigation to conclude that Deloney's conduct was outside the scope of his employment, its analysis was incorrect.

Notwithstanding that analysis, the trial court was correct in granting summary judgment to the Board based upon the allegations in the civil rights lawsuit. While that complaint alleged that Deloney's wrongful conduct occurred while he was performing his duties as a truant officer, those allegations did not impose a duty upon the Board to defend Deloney, since additional factual allegations in the complaint effectively negated the scope-of-employment allegations as a matter of law. Here, as noted above, the gravamen of the civil rights action was the alleged sexual misconduct of Deloney. That conduct, aggravated criminal sexual abuse, by its very nature precludes a conclusion that it was committed within the scope of employment. While an act may be within the scope of employment although consciously criminal (Restatement (Second) of Agency § 231, at 512 (1958)), generally, acts of sexual assault are outside the scope of employment. *E.g., Gambling v. Cornish*, 426 F. Supp. 1153 (N.D. Ill. 1977) (sexual assault by police officer outside scope of employment; no vicarious liability by employer); *Randi F. v. High Ridge*

*YMCA*, 170 Ill. App. 3d 962, 524 N.E.2d 966 (1988) (sexual assault of child by day-care teacher is deviation from scope of employment); *Bates v. Doria*, 150 Ill. App. 3d 1025, 502 N.E.2d 454 (1986) (sexual assault outside scope of authority; no vicarious liability); *Webb v. Jewel Cos.*, 137 Ill. App. 3d 1004, 485 N.E.2d 409 (1985) (sexual molestation outside scope of employment; no vicarious liability). See also, *e.g., Horace Mann Insurance Co. v. Analisa N.*, 214 Cal. App. 3d 850, 263 Cal. Rptr. 61 (1989) (no duty by insurer to indemnify teacher in civil action alleging sexual abuse); *John R. v. Oakland Unified School District*, 48 Cal. 3d 438, 769 P.2d 948, 256 Cal. Rptr. 766 (1989) (school district not vicariously liable for the sexual misconduct of its teachers); *Worcester Insurance Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 558 N.E.2d 958 (1990) (no vicarious liability by private employer for acts of sexual abuse); *Queen v. Minneapolis Public Schools, Special School District No. 1*, 481 N.W.2d 66 (Minn. App. 1992) (no duty by school district to provide legal counsel to teacher who engaged in sexual relationship with student); *Medlin v. Bass*, 327 N.C. 587, 398 S.E.2d 460 (1990) (sexual abuse of student by principal not within scope of employment); *Durham City Board of Education v. National Union Fire Insurance Co.*, 109 N.C. App. 152, 426 S.E.2d 451 (1993) (sexual assault of student by teacher beyond scope of employment). See generally Note, *"Scope of Employment" Redefined: Holding Employers Vicariously Liable for Sexual Assaults Committed by Their Employees*, 76 Minn. L. Rev. 1513, 1514 (1992) (under traditional view, sexual assault is either personally motivated or so unusual that it is outside the assailant's scope of employment).

■ In the context of *respondeat superior* liability, the term "scope of employment" excludes conduct by an employee that is solely for the benefit of the employee. As stated in *Webb v. Jewel Cos.*:

> "Under the doctrine of *respondeat superior*, an employer may be liable for the negligent, wilful, malicious or even criminal acts of its employees when such acts are committed in the course of employment and in furtherance of the business of the employer; however, the employer is not liable to an injured third party where the acts complained of thereby were committed solely for the benefit of the employee. [Citations.]" 137 Ill. App. 3d at 1006, 485 N.E.2d at 411.

See generally Restatement (Second) of Agency § 231, Comment *a*, at 513 (1958) ("serious crimes are not only unexpectable but in general are in nature different from what servants in a lawful occupation are expected to do"). In *Webb*, the plaintiff filed a complaint against the defendant supermarket and its employee, a security guard, seeking damages for injuries that resulted from an alleged sexual molesta-

tion committed at the supermarket by the security guard during his search of the plaintiff. The court affirmed the trial court's dismissal of the complaint against the employer supermarket because "the sexual molestation of a young girl by a security guard is nonetheless a deviation having no relation to the business of [the supermarket] or the furtherance thereof." 137 Ill. App. 3d at 1008, 485 N.E.2d at 412. Accord *Gambling v. Cornish*, 426 F. Supp. 1153 (summary judgment based on Illinois *respondeat superior* law finding as a matter of law police officers were not acting within scope of employment when they committed alleged torts of false arrest, false imprisonment and sexual assault); *Randi F. v. High Ridge YMCA*, 170 Ill. App. 3d 962, 524 N.E.2d 966 (1988) (sexual molestation of child by day-care teacher is deviation from scope of employment and has no relation to business of day-care center). For similar reasons, courts in other jurisdictions have affirmed summary judgments and refused to impose vicarious liability upon school boards whose employees have sexually assaulted students. In *Medlin v. Bass*, for example, the court affirmed the grant of summary judgment to the school board finding that, as a matter of law, the board was not liable for the principal's alleged sexual assault upon a student since that assault was unrelated to counseling or any other function explicitly or implicitly authorized by the board. That court stated:

> "[T]he matters alleged *** here fall in the category of intentional tortious acts designed to carry out an independent purpose of [the principal], and they thus were not within the course and scope of his employment with defendant [school district] or in furtherance of any [school district] purpose. While [the principal] was exercising authority conferred upon him by defendant [school district] when he summoned the minor plaintiff to his office to discuss her truancy problem, in proceeding to assault her sexually he was advancing a completely personal objective. The assault could advance no conceivable purpose of defendant [school district]; defendant [principal] acted for personal reasons only, and his acts thus were beyond the course and scope of employment as a matter of law." *Medlin v. Bass*, 327 N.C. at 594, 398 S.E.2d at 464.

Accord *John R. v. Oakland Unified School District*, 48 Cal. 3d 438, 769 P.2d 948, 256 Cal. Rptr. 766 (sexual misconduct of teacher too attenuated from authority conferred on teacher); *Worcester Insurance Co. v. Fells Acres Day School, Inc.*, 408 Mass. at 405 n.13, 558 N.E.2d at 967 n.13 (no vicarious liability as sexual molestations by employ-

ees did not originate in any legitimate activities closely associated with the employment relationship).[5]

■ The principles advanced in the context of imposing vicarious liability upon the public entity for the sexual misconduct of its employees apply equally in cases seeking to impose duties upon the public entity to indemnify and defend its employee as both liabilities are premised upon employee acts occurring within the scope of employment. Applying those principles to the case at bar, it is clear that the allegations of sexual misconduct in the civil rights complaint, exacerbated by the further allegation that Deloney pled guilty to aggravated criminal sexual abuse, had no relation to Deloney's job as a truant officer and were committed solely for his personal benefit. As a matter of law, his alleged actions were outside the scope of employment such that the Board owed no statutory duty to defend Deloney in the civil rights action. See *Gambling v. Cornish*, 426 F. Supp. 1153; *Randi F. v. High Ridge YMCA*, 170 Ill. App. 3d 962, 524 N.E.2d 966 (1988); *Webb v. Jewel Cos.*, 137 Ill. App. 3d 1004, 485 N.E.2d 409 (1985).

This conclusion is not inconsistent with the articulated purpose of employee indemnification statutes which, as the plaintiffs contend, is to protect employees. See J. Cole, *Defense and Indemnification of Lo-*

---

[5]While in Illinois the cases are clear that as a matter of law acts of sexual assault are not within the scope of employment, a recent California case, *Mary M. v. City of Los Angeles*, 54 Cal. 3d 302, 814 P.2d 1341, 285 Cal. Rptr. 99 (1991), held that a question of fact existed as to whether a police officer's sexual assault of a motorist detained for a traffic violation was within the scope of his employment. In reaching that conclusion, the court contrasted the sexual molestation by a school employee, a custodian, from that of a police officer and stated:

" 'There is no aspect of a janitor's duties that would make sexual assault anything other than highly unusual and very startling.' [*Alma W. v. Oakland Unified School District*, 123 Cal. App. 3d 133, 143, 176 Cal. Rptr. 287, 292 (1981).] By contrast, the very nature of law enforcement employment requires exertion of physical control over persons whom an officer has detained or arrested. The authority to use force when necessary in securing compliance with the law is fundamental to a police officer's duties in maintaining the public order. [Citation.] That authority carries with it the risk of abuse. The danger that an officer will commit a sexual assault while on duty arises from the considerable authority and control inherent in the responsibilities of an officer enforcing the law. Those responsibilities do not at all resemble the duties of a school custodian." 54 Cal. 3d at 218, 814 P.2d at 1350, 285 Cal. Rptr. at 108.

*cal Officials: Constitutional and Other Concerns,* 58 Alb. L. Rev. 789, 799 (1995), quoting New York Law Revision Comm'n, Memorandum Relating to Idemnification and Defense of Public Officers and Employees, 204th Assem., Reg. Sess. (1981) (" '[g]overnment cannot effectively function without some assurance that its members will not be called upon to personally defend themselves against claims arising out of the daily operation of the government' "). See also *Wright v. City of Danville,* 267 Ill. App. 3d 375, 385-86, 642 N.E.2d 143, 151 (1994), *leave to appeal allowed,* 159 Ill. 2d 583, 647 N.E.2d 1018 (1995), stating:

> "Where conduct which is required of those holding a certain office carries with it a risk of criminal prosecution, it can be reasonable for the public entity for which the work is done to bear financial responsibility even for expenses incurred in such criminal prosecutions, at least in some cases. [Citation.] Otherwise it may be difficult to encourage capable individuals to seek public office."

Consonant with that rationale, the School Code provision applicable here is captioned "Protection from suit" and states that the board has the duty to "indemnify and protect *** employees." Ill. Rev. Stat. 1991, ch. 122, par. 10—20.20 (now 105 ILCS 5/10—20.20 (West 1994)). However, that rationale lends little support for the argument that Deloney should be protected for his alleged conduct since there is little, if any, reason for the legislature to protect employees from claims that do not arise from conduct occurring in furtherance of the public entity's business or from which the public entity purports to receive no benefit. See J. Cole, *Defense and Indemnification of Local Officials: Constitutional and Other Concerns,* 58 Alb. L. Rev. 789, 797 (1995) (discussing New York indemnification statutes: "[b]ecause the justification for defense and indemnification payments is the provision of employment benefits in return for public service by employees, expenditure of public funds in relation to actions outside the scope of employment would have no legal underpinnings"). Since the sexual misconduct alleged here serves no conceivable public purpose and advanced a completely personal objective (see *Medlin v. Bass,* 327 N.C. 587, 398 N.E.2d 460), there would be little if any utility in imposing a duty upon the public entity to indemnify an employee charged with such conduct. See *Coleman v. Smith,* 814 F.2d 1142, 1149 (7th Cir. 1987) ("those actions having an intimate bearing on the duties normally assigned to the office of employment, even though usurped or misused, must be considered as falling within the meaning of the term 'scope of employment' ").

The two cases relied upon by the plaintiffs, *Rogers v. City of Youngstown,* an Ohio case, and *Hassan v. Fraccola,* a New York case,

are readily distinguishable. Both cases involved police officers whose misconduct could be characterized as an extension, albeit unlawful, of their police function. In *Rogers*, the officer was alleged to have assaulted and battered the private citizen while in uniform and while on duty. In *Hassan*, the officer took the citizen into custody and filed a false police report concerning the incident. Such actions are distinguishable from the actions of the truant officer in the instant case since the establishment of a sexual relationship with a minor could not conceivably relate to or be encompassed within the truant officer's public function. While Deloney's public employment provided the opportunity for his misconduct, by no stretch of the imagination could his actions be deemed an extension, albeit unlawful, of his functions or responsibilities as a truant officer. See, *e.g., Gambling v. Cornish*, 426 F. Supp. 1153; *Bates v. Doria*, 150 Ill. App. 3d 1025, 502 N.E.2d 454 (1986); *Randi F. v. High Ridge YMCA*, 170 Ill. App. 3d 962, 524 N.E.2d 966 (1988); *Webb v. Jewel Cos.*, 132 Ill. App. 3d 1004, 485 N.E.2d 409 (1985).[6]

■ We also reject plaintiffs' contention that the legislature intended to protect public employees from baseless charges brought against them because of their status as public employees. That contention must fail since that is not what the plain language of the statute says. The statute provides for indemnification for acts "alleged to be have been committed in the scope of employment" (Ill. Rev. Stat. 1991, ch. 122, par. 10—20.20 (now 105 ILCS 5/10—20.20 (West 1994))). The statute by its terms simply does not provide indemnity for baseless charges of misconduct where the charged misconduct would not have fallen within the scope of employment had the employee in fact been guilty of the misconduct. Moreover, even if plaintiffs' contention regarding baseless charges had merit, Deloney would not be entitled to any protection since it is clear that the allegations against Deloney were not baseless. As alleged in the civil rights complaint, Deloney admitted his misconduct by pleading guilty to aggravated criminal sexual abuse.

For the foregoing reasons, the summary judgment entered in favor of the Board is affirmed.

Affirmed.

COUSINS and HOURIHANE, JJ., concur.

---

[6]A further distinction can be made in that the defendants in *Rogers* and *Hassan* were police officers whereas Deloney was a school employee. See *Mary M. v. City of Los Angeles*, 54 Cal. 3d 302, 814 P.2d 1341, 285 Cal. Rptr. 99 (1991) as discussed in footnote 5 *supra*.